[No. 28537. Department Two. October 27, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Ida A. Fleischmann Bartels, Plaintiff,* v. CALVIN S. HALL, *as Judge of the Superior Court for King County, et al., Respondents.*[1]

*Allen Spratline* and *Weter, Roberts & Shefelman,* for relator.

*Lewis M. Dawson,* for respondent Fannie J. Elmore.

*Funkhouser & Twohy,* for respondent Alfred A. Elmore.

[1]Reported in 118 P. (2d) 430.

JEFFERS, J.—This matter is before the court on the application of relator for a writ of certiorari to review an order of Honorable Calvin S. Hall, judge of the superior court for King county, denying relator's motion for a change of venue from King county to Grant county, in the cause entitled "Fannie J. Elmore, Plaintiff, v. Alfred A. Elmore and Ida A. Fleischmann Bartels, Defendants," being cause No. 325791 of the superior court records of King county. Relator's motion for change of venue is based upon the ground that the convenience of witnesses and the ends of justice would be forwarded by the change.

·The defendant Ida A. Fleischmann Bartels (relator herein) will hereinafter be referred to as Mrs. Bartels.

Cause No. 325791 was instituted by Fannie J. Elmore, in the superior court for King county, against her husband, Alfred A. Elmore, and Mrs. Bartels. In her amended complaint, Mrs. Elmore alleged that she and Mr. Elmore were married in the state of Oklahoma on September 10, 1909, and have ever since been and are now husband and wife; that of the five children born of this marriage, only one, Lou Isabelle Elmore, who was born July 9, 1928, is now residing with Mrs. Elmore at her home in Seattle; that in 1931 her husband, without cause, deserted and abandoned her in Quincy, Grant county, Washington, and since that date the parties have lived separate and apart; that, from the year 1936 to 1937, Mr. Elmore sent plaintiff the sum of twenty dollars a week, for the support of herself and family; that, from 1937 to date, Mr. Elmore has sent her the sum of twenty-five dollars a week for this purpose.

The amended complaint in some detail charged that Mr. Elmore and Mrs. Bartels have been associated in business, as partners, in Grant and Douglas counties, under the name of "Elmore & Fleischmann"; and that

through such partnership dealings the defendants have acquired land, leases, options, personal property, and land and water rights in and about Coulee dam; and that, for the purpose of concealing from plaintiff any knowledge of her community property rights, defendant Mrs. Bartels has fraudulently made and received numerous contracts, deeds, and conveyances in her name, for the purpose of enabling Mr. Elmore to defraud plaintiff out of her community property. The complaint then referred to the holdings of Mr. Elmore in Grant and Douglas counties. Mrs. Elmore asked that the defendants be required to account for their financial gains and transactions since the year 1932, and make a full disclosure thereof to date.

Plaintiff prayed for an absolute decree of divorce from her husband; that she be awarded the care and custody of their minor daughter; that she be awarded the family home in Seattle, where she now resides; that she be accorded a just and equitable division of the real and personal property of the community and the partnership; and that she have other relief.

Defendant Elmore by his answer admitted the marriage, and admitted that he and his wife have lived separate and apart since 1931; admitted that since 1932 he and defendant Mrs. Bartels have been associated in business as partners, and have acquired property consisting of land, leases, options, personal property, and land and water rights in and about Coulee dam and Grant county.

Defendant then, by way of cross-complaint, alleged that since 1933 he and Mrs. Bartels have engaged in business in and around Coulee dam, and that, as a result of their joint efforts, a large amount of property has been accumulated, consisting, among other things, of lots in and around Grand Coulee and elsewhere, a valuable water works system, and other properties. The

cross-complaint then alleged that Mrs. Bartels exercised such a dominating influence over defendant Elmore that she obtained all the partnership property, as well as the individual property of defendant, to be kept in her name; that all of the property now standing in the name of Mrs. Bartels is the product of the partnership activities and the individual property of Elmore and wife. It is further alleged that defendant has at all times recognized his moral and legal obligation to support his wife and family, and is now anxious and willing so to do, but, owing to the fact that all of the partnership property is in the name and possession of defendant Mrs. Bartels, he has no income whatsoever. He then prayed for a dismissal of the complaint for a divorce; that he and plaintiff, as a community, be awarded an accounting against Mrs. Bartels for all property belonging to the partners; and that a receiver be appointed for all of such property.

Plaintiff filed a reply to the cross-complaint, in which she admitted the allegations of the cross-complaint relative to the existence of a partnership between her husband and Mrs. Bartels, and prayed, in addition to the relief asked for in her complaint, that a general receiver be appointed for all the community real and personal property of plaintiff and defendant Elmore, standing in the name or in the possession of Mrs. Bartels.

It is apparent from the pleadings that both Mr. and Mrs. Elmore are antagonistic to Mrs. Bartels, and are equally interested in establishing that a partnership existed between Mr. Elmore and Mrs. Bartels, and that the community consisting of plaintiff and defendant Elmore has an interest in all or most of the property now standing in the name and in the possession of Mrs. Bartels, the greater part of which property is in Grant county, and in and around Coulee dam.

On June 25, 1941, Mrs. Bartels filed her motion for change of venue to Grant county, for the reason hereinbefore referred to. The motion was based upon the files and pleadings herein, and upon the affidavit of Mrs. Bartels. Mr. Elmore made no resistance by way of affidavit to Mrs. Bartels' motion for change of venue. Mrs. Elmore filed an affidavit resisting the motion.

Judge Hall, July 31, 1941, denied Mrs. Bartels' motion for change of venue, basing his action upon the pleadings, the affidavit of Mrs. Bartels, and the affidavit of plaintiff.

We shall summarize as briefly as possible the affidavit of Mrs. Bartels. It is stated in the affidavit that the action involves and concerns many properties, real estate, personal property, and a private utility located in Grant county, which are owned by Mrs. Bartels individually; that it involves many transactions and dealings, not only between Mrs. Bartels and defendant Elmore, but many other persons; that practically all of these transactions took place in Grant, Douglas, and Chelan counties; that only one small piece of property is located in King county; that the records, both public and private, are principally in Grant, Douglas, Lincoln, Ferry, and Stevens counties, and that practically all the witnesses who will be called to testify concerning the above properties and transactions reside in Grant and Douglas counties; that, in the event the action is tried in King county, these witnesses cannot be compelled to personally attend the trial, inasmuch as they do not reside in King county, but reside from two hundred to three hundred miles from Seattle; that the public records concerning the ownership and title of the property referred to are principally of record in Grant county, and are located at Ephrata.

The affidavit then lists the names of some eight witnesses, all residents of Grant county, who are some of the witnesses Mrs. Bartels will call, stating what they will testify to. We do not feel called upon to set out what it is claimed these witnesses will testify to, other than that it is stated that their testimony would be to the effect that the property claimed to be partnership property is recognized as the separate property of Mrs. Bartels; that Mr. Elmore was merely her representative; that these witnesses and others will testify that Mrs. Bartels is the sole owner of the property in question and that Mr. Elmore has never questioned her right to carry on these transactions in her own name; that the transactions and dealings referred to include sales, purchases of real estate, equipment, fixtures, etc., constituting assets of the Grand Coulee Heights Land & Water Company.

It is apparent from this affidavit that at least all the witnesses to be called by Mrs. Bartels will come from Grant county and that vicinity, where the greater part of the transactions between Mr. Elmore and Mrs. Bartels have taken place.

The affidavit of Mrs. Elmore may be summarized as follows: She states that a large part of Mrs. Bartels' affidavit is taken up with what third parties would testify to, which has no bearing on the issues in the case; that the main issue is her request for a divorce, and flowing out of that issue is a request for a division of the community property. She then repeats in effect the allegations of her complaint relative to Mrs. Bartels having, by fraud and deceit, obtained possession of the community property, and states that since the complaint was served she has received no allowance from her husband. Affiant then states that she has made no application for temporary alimony and attorney's fees, for the reason that she is informed and believes

that, since the action was commenced, Mrs. Bartels has refused to give Mr. Elmore any money, and it would therefore be a futile thing to apply to the court for alimony and attorney's fees; that affiant is without funds to go to Grant county for trial of this case; that her two sons, Barrett and Clabourne, are both working in and out of Seattle, and are material witnesses to establish her case, but would be unable to go to Grant county to testify in affiant's behalf; that it would be a denial of justice to plaintiff to send this case for trial to Grant county, when the defendant Mrs. Bartels can testify in King county as easily as in Grant county. Affiant further states that her son Edward is now stationed at Fort Lewis, Washington, and could "probably obtain leave to attend the trial in King county where he could not go to Grant county." Mrs. Elmore's affidavit concludes with a general statement that all the people named in Mrs. Bartels' affidavit have little or absolutely no knowledge relative to the divorce issue, and little or no knowledge of the fraud and deceit practiced by Mrs. Bartels upon defendant Elmore; that the convenience of witnesses and the ends of justice will be best served by retaining the action in King county; that defendant Elmore is not objecting to a trial of the case in King county.

Relator recognizes and frankly admits that the granting or denying of a motion for change of venue involves the exercise of discretion by the trial court, and that, where the record or proof is conflicting on the question of whether or not the convenience of witnesses would be better served by a change of venue, this court will not review the action of the trial court. However, relator contends that it is also the rule in this state that where the record or proof with reference to the convenience of witnesses is not conflicting, and it is shown that the convenience of witnesses would

be served by granting a change of venue, then this court will review and reverse the action of the trial court in denying the change.

Counsel for the respective parties hereto all rely to a certain extent on what we have stated in the following cases: *State ex rel. Ross v. Superior Court*, 132 Wash. 102, 231 Pac. 453; *State ex rel. Shook v. Superior Court*, 141 Wash. 651, 252 Pac. 103; *State ex rel. Merritt v. Superior Court*, 147 Wash. 690, 267 Pac. 503; *State ex rel. Beffa v. Superior Court*, 3 Wn. (2d) 184, 100 P. (2d) 6; and *State ex rel. Nielsen v. Superior Court*, 7 Wn. (2d) 562, 115 P. (2d) 142.

While the nominal respondent in this action is the trial court, we shall herein refer to Mr. and Mrs. Elmore as respondents.

Counsel for respondent Alfred A. Elmore seem to take the position that the effect of the decisions in the *Ross* and *Merritt* cases, *supra*, has been weakened by our decision in the *Shook* and *Neilsen* cases, *supra*, and that this court has taken the position that it will not substitute its judgment for the discretion of the trial court, except in an extreme case of unreasonable caprice.

While no two judges use the same phraseology in writing opinions, and different expressions will be found in the different cases involving the question now before us, we do not believe the cases can be construed as sustaining the contention of respondent last above referred to. The *Nielsen* case, *supra*, does not in any manner purport to change the effect of the decision in either the *Ross* or the *Merritt* case, *supra*; nor do we think it does. In the *Nielsen* case, after setting out what we considered the distinguishing factual differences betwen the two cases above referred to and the *Nielsen* case, we stated: "The two cases above cited

present, on the facts, different situations than that presented in the instant case."

The question before us in the *Nielsen* case, as in all other cases of this character, was whether or not the trial court had abused the discretion vested in it. This is apparent from the following statement found in the opinion: "This surely presented a question which called for an exercise of judicial discretion by the trial judge." We held that the refusal of the trial court to grant the change was based upon reasonable grounds, and this being true, there could not, of course, be an abuse of discretion.

We are also satisfied the case of *State ex rel. Shook v. Superior Court, supra,* does not tend to weaken the effect of the decisions in the *Ross* and *Merritt* cases, *supra.* We quote from the *Shook* case:

"We have uniformly held in cases of this kind, that is, applications for a change of venue on the grounds that the convenience of witnesses and forwarding of justice required it, that the matter of such change is addressed to the discretion of the trial judge to whom the application is presented, and that we will not review, prior to an appeal in regular course, the judgment and discretion exercised by him, by a writ of mandate, where the hearing before him was had upon conflicting affidavits, as was the fact in this case."

In the case of *State ex rel. Beffa v. Superior Court, supra,* this court recognized the force and effect of the *Ross* and *Merritt* cases, by the following language:

·"Those cases all hold that, while an application for change of venue on the ground of convenience of witnesses is addressed to the sound discretion of the court, nevertheless, if the discretion be exercised in an arbitrary or capricious manner, it amounts to an abuse of discretion, such as will justify this court in reviewing the matter upon application for a writ of mandate."

The case further states:

"The question to be decided, then, is whether, in denying relator's motion for change of venue, the superior court abused its discretion."

We are of the opinion that, if the record in this case, as shown by the pleadings and the affidavits of Mrs. Elmore and Mrs. Bartels, does not present a situation which would require a trial court to grant a change of venue, it would hardly be possible to ever have such a situation, and if the refusal of the trial court in this case to grant the change does not show arbitrary action on its part constituting an abuse of discretion, then it seems to us it must be admitted the statute is of little or no value. We have set out quite fully the pleadings and affidavits, and it would not seem to be necessary to restate what was contained therein.

We admit, as contended by respondents, that it will be necessary for the plaintiff to first prove that she is entitled to a divorce before she can claim the relief or offer proof in regard to the relief asked against relator, Mrs. Bartels. Yet we are convinced, from a reading of this record, that the real issue in this case, and the one which will probably require the introduction of testimony of many witnesses, is the question concerning the property which both Mr. and Mrs. Elmore claim Mrs. Bartels now holds in her name. This question involves the further question of whether or not there was a partnership, and probably will involve testimony relative to many transactions referred to in the pleadings and the affidavits. It is admitted that the desertion took place in Grant county, and we think it quite clearly appears that the greater part of the transactions between Mr. Elmore and Mrs. Bartels occurred at Grand Coulee, in Grant county, or in that vicinity.

Both Mr. and Mrs. Elmore not only have asked for

an accounting, but they both ask that a receiver be appointed for all this property, which it is claimed now stands in the name of Mrs. Bartels, or is in her possession. Relator has listed the names of eight witnesses whom she expects to call, all of whom reside in Grant county, and she further states she will call others from that locality. The only witnesses referred to by Mrs. Elmore are her three sons. She does not attempt to set out what they will testify to, but states that they will be material witnesses.

Mrs. Elmore states that the witnesses listed by relator know nothing about the issues in this case, but this is nothing more than a conclusion on her part. She also states that their testimony can be only hearsay and therefore not material, but this we cannot concede.

Mrs. Elmore contends that the case of *State ex rel. Ross v. Superior Court*, 132 Wash. 102, 231 Pac. 453, sustains her position that in the instant case the divorce issue is the principal one, and the question of a division of the property only secondary. Such a statement was made in the *Ross* case, but it was based upon a factual situation entirely different than that presented in this case. In the *Ross* case, the only parties to the action were the husband and wife. The opinion states the land in question had been acquired by the wife prior to marriage. It is evident, we think, that neither the trial court nor this court gave any serious consideration to the husband's claim relative to the land in question.

As stated in the *Nielsen* case, *supra*, the entire situation must be looked at, and due consideration given to the convenience of the witnesses for each party. The convenience of the parties, as such, is not to be considered. *McConnon & Co. v. Sletten*, 55 N. D. 388, 213 N. W. 483.

After a consideration of this entire record, we

are convinced that the refusal of the trial court to grant a change of venue was not based upon reasonable grounds. We are further convinced that the convenience of witnesses and the ends of justice will be best served by changing the venue of this case to Grant county, and that the trial court manifested an arbitrary abuse of the discretion vested in it, in refusing to grant the motion for a change of venue.

The order under review is reversed, and the cause remanded to the superior court with directions to grant the motion for change of venue.

ROBINSON, C. J., BLAKE, SIMPSON, and BEALS, JJ., concur.